# IN THE UNITED STATES COURT
# FOR THE WESTERN DISTRICT of PA.

Securities Exchange Commission
450 5th Street, N.W.
Washington, D.C. 20549

97-CV-2257

v.

John Gardner Black
Financial Management Sciences, Inc. "FMS"
Devon Capital Management, Inc. "Devon"
   Collectively, "Defendants"

FILED
MAR 09 2021
CLERK U.S. DISTRICT COURT
WEST. DIST. OF PENNSYLVANIA

# MOTION TO ADJUST FINE TO
# COMPLY WITH STATUTES
# AND REDUCE DISGORGEMENT

John G. Black
1446 Centre Line Rd.
Warriors Mark, Pa. 16877
814-682-6630

Introduction

On September 26, 1997, the Commission introduced a complaint ("Complaint") in US District Court for the Western District of Pennsylvania alleging that Defendants had violated § 17(a) of the Securities Act of 1933, 15 USC § 77q(a) and § 10(b) of the Exchange Act of 1934, 15 USC § 78j(b) and Rule 10b-5, 17 CFR § 240.10b-5 ["Securities Acts"]. The Complaint further alleged that Devon and Black violated sections 206(1), (2) and (4) of the Investment Advisers Act of 1940, 15 USC § 80b-6(1), (2) and (4) and Rule 206(4)-2, 17 CFR § 275.206 (4)-2.

On April 28, 1998, a disgorgement order against Black was entered by the district court under the Investment Adviser Act in the amount of $3,632,031 and prejudgment interest of $326,883 and a fine payable to the US Treasury for $500,000 [Docket # 278]. The basis for the disgorgement was the entire operating expense of FMS from January, 1995 to September, 1997 instead of the roughly $350,000 in compensation paid to Black. [Documentation in possession of the SEC]

The Commission settled the alleged violations of the Investment Adviser's Act with Black and Devon on May 4, 1998. Defendants and the Commission never settled the allegation of securities fraud.

On January 24, 2000, the government and Black agreed upon a Joint Stipulation of Facts ["JSF"].

**Excessive Fine**

"Any person who willfully violates any provision of this title, or any rule, regulation, or order promulgated by the Commission under authority thereof, shall, upon conviction, be fined not more than $10,000, imprisoned for not more than five years, or both." [Investment Advisers Act of 1940 § 217]

The district court imposed a fine of $500,000, fifty times the maximum allowed by law. Such excessive fine violates the Eighth Amendment to the United State Constitution by exceeding the maximum fine permitted by law.

**Unjust Enrichment**

Effective January 1, 2021, the Congress enacted legislation that grants to district courts the authority to "require disgorgement...of any unjust enrichment by the person who received such unjust enrichment as a result of" a violation of the securities laws.

The SEC claimed that a disgorgement of $3,632,031 and prejudgment interest of $326,883 should be imposed on Black.

> The elements of an unjust enrichment claim under Pennsylvania law are "(1) benefits conferred on defendant by plaintiff, (2) appreciation of such benefits by defendant, and (3) acceptance and retention of such benefits under such circumstances that it would be inequitable for defendant to retain the benefit without payment of value." *Mark Hershey Farms, Inc. v. Robinson*, 171 A.3d 810, 817 (Pa. Super. Ct. 2017) (citation and modifications omitted). Unjust enrichment does not exist whenever one-party benefits another; rather, a plaintiff must show circumstances that would make it "unconscionable" for the defendant to retain the benefit conferred. *Id.* (citation omitted). "The most

important factor . . . is whether the enrichment of the defendant is *unjust.*" *Schenck v. K.E. David, Ltd.*, 666 A.2d 327, 328 (Pa. Super. Ct. 1995). *Argue v. Triton Digital Inc.,* Case 17-02221-0, Court of Appeals, 3rd Circuit May 4, 2018

In order for the disgorgement order to be valid, the income generated on the FMS assets and retained by FMS to operate the business prior to profit distributions to the Clients, must be unjust. Unjust enrichment of FMS could also occur if any Client acquired the CIA for a value greater than its fair value.

**Did FMS withhold excessive amounts from the income generated on its assets?**

The Complaint does not state what the income of FMS was from January 1995 to October 1997, but the government has stipulated that the assets were yielding 14% and that the liquidation value was $164 million. [JSF ¶ 53] FMS had annual revenue of approximately $23 million or total revenue of roughly $64 million and paid out profits of approximately $61 million after the costs of operations, a little over $22 million per year.

The price/earnings ratio of the S&P in 1996 was 18.08. [*Irrational Exuberance*, Robert Shiller, Princeton University Press Copyright 2016]. Applying an 18 p/e to $22 million values the CIA at $396 million; a p/e of 14 values the CIA at $308 million. Black used a p/e of 9.5 to value the CIA at $233 million.

The normal fee structure in the industry at the time was 2% annual fee on assets and 20% of the profits. $233 million times 2% is an annual fee over $4 million + 20% of the $22 million annual distribution is an additional $5 million a total fee structure of $9 million annually. FMS retained

approximately $1.2 million per year. FMS and Black did not withhold excessive amounts from the profits earned and there was no unjust enrichment conferred to them.

**Did FMS misrepresent the value of the CIA in any purchase or sale?**

The CIA was an investment contract. [Complaint ¶ 21] An investment contract is: (1) an investment of money; (2) in a common enterprise; with, (3) a reasonable expectation of profits to be generated through the managerial or entrepreneurial efforts of others. [district court opinion in *SEC v Black*, May 9, 2001]

However, the SEC chose, without the benefit of published regulations, to value the CIA as if it were a repurchase agreement rather than a security.[1] The CIA was sold in May, 1994 [JSF ¶ 23]. The decline in market value of the FMS assets was caused by the Federal Reserve raising interest rates [JSF ¶ 35], which resulted in increased yields on the FMS assets. The "losses" in market value of those assets occurred after January 1, 1995 [Complaint ¶ 30]. As noted above, the value of the CIA always exceeded the Client's acquisition cost.

**Conclusion**

The enterprise the Clients invested in was profitable and their investment in that enterprise was fairly valued. Any owner of the CIA could have sold their investment contract at any time for at

---

[1] It was not until August 15, 2001 that the Commission issued any regulation concerning collateral for a repurchase agreement. Not surprisingly this regulation followed in short order the May 9, 2001 opinion of the district court. There is no regulation requiring the issuer of an investment contract to maintain assets in the enterprise equal to the market value of the investment contracts outstanding.

least the value represented in their monthly statements. Therefore, the order of disgorgement does not meet test for unjust enrichment. The Clients did not acquire their investment for an unfair value and the profits distributed after expenses were higher than industry standards. It is not inequitable for Black to keep the benefits.

The overarching question though is how could any court hold that the CIA was an investment contract to be valued on a reasonable expectation of profits without an income statement of the enterprise. Either those courts were furnished with an income statement that was incorrect or those courts decided to value the CIA as a repurchase agreement. In 1997 there was no federal regulation controlling repurchase agreements. The audited financial statements the trustee, prepared as he was directed by this court, should be placed into evidence. FMS was charged over $3 million dollars by the trustee and his accountants for the statements; they must exist even though they have not been released.

The district court imposed a $500,000 fine against Black for violation of the Investment Advisers Act. That act only allows a maximum fine of $10,000. This court erred in the imposition of a fine 50 times greater than the maximum amount permitted by law.

The changes in the securities laws enacted by Congress on January 1, 2021; the opinions of the Third Circuit Court of Appeals and the Pennsylvania Supreme Court, require this court to determine, based upon the evidence, what the value of the CIA was, at least on September 26, 1997. Unjust enrichment of Black did not occur because the value of the CIA, based upon a

reasonable expectation of profits, was worth at least the value represented to the Clients. Without unjust enrichment, the order of disgorgement is void.

Black is still having funds withheld from his Social Security income to pay an erroneously imposed disgorgement and fine, causing an ongoing harm.

March 1, 2021                                                          Submitted,

                                                                       John G. Black

IN THE UNITED STATES COURT

FOR THE WESTERN DISTRICT of PA.

| | |
|---|---|
| Securities Exchange Commission<br>450 5th Street, N.W.<br>Washington, D.C. 20549<br><br>v.<br><br>John Gardner Black<br>Financial Management Sciences, Inc. "FMS"<br>Devon Capital Management, Inc. "Devon"<br>    Collectively, "Defendants" | :<br>:<br>:<br>:<br>:        97-CV-2257<br>:<br>:<br>:<br>:<br>:<br>: |

## Certificate of Service

I certify that on March 5, 2021 I served a copy of the foregoing document on the following parties by depositing same in the U.S. Postal Service.

        Office of the General Counsel
        United States Securities Exchange Commission
        100 F. Street N.E.
        Washington DC 20549

/John G. Black